Brian S. King, #4610
Brent J. Newton, #6950
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| A.C., and J.C.,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>BLUECROSS BLUESHIELD of ILLINOIS, and the NORTH SUBURBAN SPECIAL EDUCATION DISTRICT BENEFITS PLAN.<br><br>　　　　Defendants. | COMPLAINT<br><br>Case No. 1:22-cv-00128 – CMR<br><br>Magistrate Judge Cecilia M. Romero |

Plaintiffs A.C. and J.C., through their undersigned counsel, complain and allege against Defendants BlueCross BlueShield of Illinois ("BCBSIL") and the North Suburban Special Education District Benefits Plan ("the Plan") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. A.C. and J.C. are natural persons residing in Cook County, Illinois. A.C. is J.C.'s mother.

2. BCBSIL is an independent licensee of the nationwide BlueCross and BlueShield network of providers and was the third-party claims administrator, as well as the fiduciary under

1

     ERISA for the insurance plan providing coverage for the Plaintiffs ("the Plan") during the treatment at issue in this case.

3. The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). A.C. was a participant in the Plan and J.C. was a beneficiary of the Plan at all relevant times. A.C. and J.C. continue to be participants and beneficiaries of the Plan.

4. J.C. received medical care and treatment at Waypoint Academy ("Waypoint") beginning on January 26, 2020. Waypoint is licensed to provide both residential treatment and transitional living services and is located in Weber County, Utah. It provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

5. BCBSIL denied claims for payment of J.C.'s medical expenses in connection with his treatment at Waypoint.

6. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

7. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because BCBSIL does business in Utah through its network of affiliates, and the treatment at issue took place in Utah.

8. In addition, the Plaintiffs have been informed and reasonably believe that litigating the case outside of Utah will likely lead to substantially increased litigation costs they will be responsible to pay and that would not be incurred if venue of the case remains in Utah. Finally, given the sensitive nature of the medical treatment at issue, it is the Plaintiffs'

desire that the case be resolved in the State of Utah where it is more likely their privacy will be preserved.

9. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the failure of the Defendants' to comply with ERISA's claims procedure and fiduciary duty requirements, an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### J.C.'s Developmental History and Medical Background

### Waypoint

10. J.C. was admitted to Waypoint on January 26, 2020, due to maladaptive behaviors fueled by depression and anxiety which had not been able to be adequately addressed in other levels of care. He then began receiving transitional living services beginning on July 1, 2020. However due to concerns regarding J.C.'s safety, J.C. was removed from Waypoint's transitional living program and readmitted to its residential treatment program on November 18, 2020.

11. In a series of Explanation of Benefits ("EOB") statements BCBSIL denied payment for J.C.'s treatment due to several factors, including:

(1) Coverage for this service has been denied because the provider was not eligible to bill this type of service according to the provider's credentials, or the service was not within the scope of the provider's practice under the provider's license or applicable medical standards or guidelines.

(2) We have asked your health care provider for more information. We will complete your claim when this information is received. No payment for this service can be made at this time.

(4) This expense/service is not covered under the terms and conditions of your Health Care Plan. No payment can be made.

(2) This service is excluded under your Health Care Plan. Please refer to your benefit booklet for specific coverage information and exclusions under your contract.

12. On July 9, 2021, A.C. submitted an appeal of the denial of payment for J.C.'s treatment.

13. A.C. reminded BCBSIL that she was entitled to certain protections under ERISA including a full, fair, and thorough review conducted by appropriately qualified reviewers, which took into account all of the information she provided and gave her the specific reasons for the adverse determination, referenced the specific plan provision on which the determination was based, and which gave her the information necessary to perfect the claim.

14. She requested that the reviewer be knowledgeable concerning the federal Mental Health Parity and Addiction Equity Act ("MHPAEA") as well as generally accepted standards and clinical best practices for residential treatment and transitional programs, and also requested to be provided with a physical copy of any documentation related to the appeal determination and the initial denial including the reviewers' case notes and reports.

15. She wrote that she had contacted BCBSIL to obtain a more detailed explanation for the denial apart from the EOB's and was told by the BCBSIL representative that Waypoint did not meet BCBSIL's criteria and no written denial would be provided.

16. She contended that BCBSIL had a direct responsibility to provide her with the specific information about how and why the services were not covered but that BCBSIL but it had refused to do so.

17. A.C. contended that BCBSIL had not adequately communicated the justification for the denial.

18. She wrote that Waypoint was a licensed and accredited residential treatment center which also met the Plan's definition of a provider. She also stated that transitional services were not excluded in the insurance policy.

19. She stated that BCBSIL should not require any additional information to process the claims as she had already submitted this information multiple times. She stated that she was once again including copies of J.C.'s medical records with the appeal.

20. She asked in the event the denial was upheld to be provided with a copy of all documents under which the Plan was operated including all governing plan documents, the summary plan description, any insurance policies in place for the benefits she was seeking, any administrative service agreements that existed, and to help assess the Plan's MHPAEA compliance, a copy of any guidelines or criteria used in the determination as well as their medical or surgical equivalents whether or not these were used, along with the names, qualifications, and denial rates of all individuals who reviewed or were otherwise consulted about the claim. (Collectively the "Plan Documents")

21. She asked that in the event BCBSIL did not possess these documents or was not acting on behalf of the Plan Administrator in this regard that it forward her request to the appropriate entity.

22. In a letter dated September 14, 2021, BCBSIL upheld the denial of payment for J.C.'s treatment. The letter, signed by Appeals Specialist Sarah L. gave the following justification for the denial:

> This is a member appeal disputing the benefit exclusion for the above mentioned claims. Based on review of the documentation submitted it has been determined the charges were denied correctly and in accordance with the policy provisions; there are no benefits available at this time. The above mentioned claim was billed f or [sic] a condition specifically listed in the "Exclusions – What is Not Covered" portion of the member's plan and is an excluded benefit.

23. The letter further stated:

> **Additional information can be found in the member's EDUCATIONAL BENEFIT COOPERATIVE-EBC Summary Plan Description and/or benefit booklet:**
>
> Please refer to the "Definitions" section which states:
>
> "QUALIFIED ASA PROVIDER ..... means a Provider operating within the scope of his/her license registration or certification that has met the following requirements:
>
> For the treatment supervisor/case manager/facilitator:
>
> (i) Master's level, independently licensed Clinician, who is licensed, certified, or registered by an appropriate agency in the state where services are being provided, for services treating Autism Spectrum Disorder (ASD) symptoms, with or without applied behavior analysis (ABA) service techniques; or
>
> (ii) Master's level Clinician whose professional credential is recognized and accepted by an appropriate agency of the United States (i.e. Board-Certified Behavior Analyst (BCBA) or Board-Certified Behavior Analyst-Doctoral (BCBA-D) to supervise and provide treatment planning, with ABA service techniques; or
>
> (iii) Health Care Practitioner who is certified as a provider under the TRICARE military health system, if requesting to provide ABA services; or
>
> (iv) Master's level Clinician with a specific professional credential or certification recognized by the state in which the clinician is located; or
>
> 1. Developmental Therapist with Certified Early Intervention Specialist credential or CEIS; or
>
> 2. If the Doctor or Medicine [sic] (MD) prescribes ABA, writes a MD order for services to be provided by a specific person.
>
> For the para?professional/line [sic] therapist:
>
> (i) Two years of college educated staff person with a Board Certified Assistant Behavior Analyst (BCABA) for the paraprofessional/therapist; or
>
> (ii) A bachelor level or high school graduate having obtained a GED, OR a staff person with a Registered Behavior Tech (RBT) certification for the direct line therapist; or

(iii) A person who is "certified as a provider under TRICARE military health system," if requesting to provide ABA services."

Additionally, please refer to the "Special Conditions and Payments" section which states:

"MENTAL ILLNESS AND SUBSTANCE USE DISORDER SERVICES

Benefits for all of the Covered Services described in this benefit booklet are available for the diagnosis and/or treatment of a Mental Illness and/or Substance Use Disorder. Inpatient benefits for these Covered Services will also be provided for the diagnosis and/or treatment of Inpatient Mental Illness or Substance Use Disorder in a Residential Treatment Center. Treatment of a Mental Illness or Substance Use Disorder is eligible when rendered by a Behavioral Health Practitioner working within the scope of their license. Covered Services rendered in a Non-Administrator Provider facility will be paid at the Non-Participating Provider facility payment level."

Finally, please refer to the "Exclusions - What is Not Covered" section which states:

"Expenses for the following are not covered under your benefit program:

- Behavioral health services provided at behavioral and/or treatment modification facilities, boot camps, emotional group academies, military schools, therapeutic boarding schools, wilderness programs, halfway houses, and group homes, except for Covered Services provided by appropriate Providers as defined in this benefit booklet.

Any of the following applied behavioral analysis (ABA) related services:

-Services that are facilitated by a Provider that is not properly credentialed. Please see the definition of "Qualified ABA Provider" in the DEFINITIONS SECTION of this benefit booklet;

- Activities primarily of an educational nature;

- Shadow or companion services; or

- Any other services not provided by an appropriately licensed Provider in accordance with nationally accepted treatment standards." (emphasis in original)

24. The letter did not specify which, if any, of these of these exclusions were meant to apply. The information it provided was, essentially, meaningless as an explanation of the reasons for the claim denial.

25. To add to the confusion, the language in the denial letter was not an accurate restatement of the language in the summary plan description ("SPD") and omitted large portions of text without any use of ellipses or any other indication that the text has been modified.

26. For instance, the exclusion "Services with a primary diagnosis that is not Autism Spectrum Disorder" is present in the SPD language but was omitted from the denial letter without any indication that this material had been removed.

27. It is unclear whether these omissions were due to an inadvertent error, whether BCBSIL evaluated J.C.'s treatment using an insurance policy for another insured which did not contain the relevant language, or whether BCBSIL quoted only the exclusions it felt applied.

28. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

29. The denial of benefits for J.C.'s treatment was a breach of contract and caused A.C. to incur medical expenses that should have been paid by the Plan in an amount totaling over $440,000.

30. BCBSIL failed to produce a copy of the Plan Documents despite A.C.'s request.

## CAUSE OF ACTION

**(Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))**

31. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as

BCBSIL, acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

32. BCBSIL and the Plan failed to provide coverage for J.C.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

33. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

34. The denial letters produced by BCBSIL do little to elucidate whether BCBSIL conducted a meaningful analysis of the Plaintiffs' appeals or whether it provided them with the "full and fair review" to which they are entitled.

35. BCBSIL failed to substantively respond to the issues presented in A.C.'s appeals and did not meaningfully address the arguments or concerns that the Plaintiffs raised during the appeals process.

36. In fact, after A.C. contacted BCBSIL to obtain additional information concerning the denial, BCBSIL refused to furnish a denial other than the EOB's it had already provided.

37. The response to A.C.'s appeal is similarly vague, does not specify which, if any, of the quoted exclusions J.C. failed to meet, and the quoted language has been altered from the original with no indication that this was done.

38. BCBSIL and the agents of the Plan breached their fiduciary duties to J.C. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act

solely in J.C.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of J.C.'s claims.

39. The actions of BCBSIL and the Plan in failing to provide coverage for J.C.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

40. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for J.C.'s medically necessary treatment at Waypoint under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of ERISA claims procedure and fiduciary duty requirements;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 30th day of September, 2022.

By    s/ Brian S. King
       Brian S. King
       Attorney for Plaintiffs

County of Plaintiffs' Residence:
Cook County, Illinois.